[No. 7879–8–I.    Division One.    October 13, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. PAUL
WHITTINGTON, *Appellant.*

*Dennis Lee Burman* and *Jay Carey,* for appellant.

*Russ Juckett, Prosecuting Attorney,* and *William W. Spencer, Deputy,* for respondent.

DURHAM–DIVELBISS, J.—Paul Whittington, age 14, appeals from his sentence of 52 weeks in the custody of the Department of Social and Health Services (DSHS), based on a finding of "manifest injustice" under RCW 13.40-.160(2).

Whittington was convicted of second degree reckless burning at an adjudicatory hearing on June 18, 1979. At the conclusion of the hearing, the State informed the court that it would seek a finding of "manifest injustice" at the disposition hearing.

At the disposition hearing on July 6, 1979, the court heard testimony from Whittington's mother, aunt, and probation counselor, and informed the parties that it had previously reviewed the State's presentence report. Whittington's counsel charged that the "manifest injustice" provision was unconstitutionally vague, and objected to the State's failure to provide prior written notice of its intent to seek it. He did not, however, object to the unsworn testimony of the probation counselor, or to the court's use of the presentence report.

The court found that it would be "manifestly unjust" to sentence Whittington within the standard range for a juvenile first offender because of the lack of rehabilitation programs available, Whittington's danger to himself and to society, and lack of parental control. He was sentenced to 52 weeks in the custody of DSHS. On September 27, 1979, the court designated the portions of the record on which it had relied in making its finding of manifest injustice, listing

the presentence report, as well as a number of letters written by persons who had dealt with Whittington, expressing their evaluations of him.

Whittington first assigns error to the State's failure to provide him with prior written notice that it would seek a declaration of "manifest injustice." He claims that due process requires written notice of the specific charges and factual allegations to be considered at the hearing sufficiently in advance to permit adequate preparation.

Whittington relies primarily on *Specht v. Patterson,* 386 U.S. 605, 18 L. Ed. 2d 326, 87 S. Ct. 1209 (1967) where the court found the Colorado sex offender's act to be unconstitutional. Holding that the defendant was "entitled to the full panoply of the relevant protections which due process guarantees in state criminal proceedings", *Specht v. Patterson, supra* at 609, quoting from *United States ex rel. Gerchman v. Maroney,* 355 F.2d 302, 312 (3d Cir. 1966), the court noted:

> The case is not unlike those under recidivist statutes where an habitual criminal issue is "a distinct issue" on which a defendant "must receive reasonable notice and an opportunity to be heard." *Oyler v. Boles,* 368 U.S. 448, 452 [7 L. Ed. 2d 446, 82 S. Ct. 501 (1962)]; *Chandler v. Fretag,* 348 U.S. 3, 8 [99 L. Ed. 4, 75 S. Ct. 1 (1954)].

(Citation omitted.) *Specht v. Patterson, supra* at 610.

The State argues that our statute[1] is distinguishable from that declared unconstitutional in *Specht,* citing a line

---

[1]RCW 13.40.160(2) states:

Where the respondent is found to be a minor or first offender, the court shall order that the respondent serve a term of community supervision. If the court determines that a disposition of community supervision would effectuate a manifest injustice the court may impose another disposition. *A disposition other than a community supervision may be imposed only after the court enters reasons upon which it bases its conclusions that imposition of community supervision would effectuate a manifest injustice.*

(Italics ours.)

A "manifest injustice" is defined in RCW 13.40.020(12) as "a disposition that would impose an excessive penalty on the juvenile or a clear danger to society in light of the purposes of this chapter."

of federal cases that found *Specht* inapplicable to an analogous federal sentencing scheme. *United States v. Neary,* 552 F.2d 1184 (7th Cir. 1977); *United States v. Bowdach,* 561 F.2d 1160 (5th Cir. 1977); *United States v. Stewart,* 531 F.2d 326, 41 A.L.R. Fed. 550 (6th Cir.), *cert. denied,* 426 U.S. 922, 49 L. Ed. 2d 376, 96 S. Ct. 2629 (1976); *United States v. Williamson,* 567 F.2d 610 (4th Cir. 1977). However, inasmuch as those cases either avoided or distinguished *Specht,* they do not provide sufficient guidance upon which we can rely here.

■ To the contrary, Washington courts have adopted the *Specht* due process standards. In *State v. Frazier,* 81 Wn.2d 628, 503 P.2d 1073 (1972), the Supreme Court held that RCW 9.41.025, which enhanced the penalty for a crime committed with an inherently deadly weapon, merely created an additional penalty, rather than a separate crime. Nevertheless, the court held that the highest standards of due process applied.

> In this case we are dealing with a factual determination which, if determined adversely to the appellant, irrevocably forbids the court from exercising its independent judgment concerning whether the appellant is to receive a deferred or suspended sentence. The result of an adverse determination is to compel incarceration in the penal institutions for certain fixed minimum periods of time. This determination is all made prior to the imposition of final judgment and sentence. Procedural due process of the highest standard must, therefore, be afforded the appellant. *Specht v. Patterson,* 386 U.S. 605, 18 L. Ed. 2d 326, 87 S. Ct. 1209 (1967).

*State v. Frazier, supra* at 634.

These same high standards of due process have also been held to apply under the habitual criminal statute, often referred to as a "status," rather than a separate, crime. *See State v. Tatum,* 61 Wn.2d 576, 379 P.2d 372 (1963); *State v. Harkness,* 1 Wn.2d 530, 96 P.2d 460 (1939).

Here, the court was required by statute to sentence a first–time juvenile offender to serve a term of community service. Before a more severe punishment could be

imposed, it was necessary for the court to conclude that community supervision would create a "danger to society." This is indistinguishable from the statutory requirement in *Specht, i.e.,* that the court determine whether the defendant "constitutes a threat of bodily harm to members of the public". *Specht v. Patterson, supra* at 607.

Accordingly, Whittington was entitled to all the procedural safeguards normally required in any criminal trial. This places no more burden on the State than exists when the State seeks a deadly weapon finding, *see State v. Cosner,* 85 Wn.2d 45, 530 P.2d 317 (1975), or a habitual offender judgment, *see State v. Tatum, supra.*

It is not necessary for the State to include its intent to seek a finding of manifest injustice in the information charging the juvenile with the underlying crime, because a finding of manifest injustice is not an automatic result of conviction, but merely a possible collateral consequence. *State v. Shaffer,* 18 Wn. App. 652, 571 P.2d 220 (1977), *cert. denied,* 439 U.S. 1050, 58 L. Ed. 2d 710, 99 S. Ct. 729 (1978); *State v. Johnston,* 17 Wn. App. 486, 564 P.2d 1159 (1977); *Oyler v. Boles,* 368 U.S. 448, 7 L. Ed. 2d 446, 82 S. Ct. 501 (1962).

It only remains then to determine whether appellant's due process rights were violated by the procedures employed here. The State informed Whittington and the court at the conclusion of the adjudicatory hearing of its intent to seek a declaration of manifest injustice. The presentence report submitted by Whittington's probation counselor recommended a finding of manifest injustice and stated the reasons for such a recommendation. It also recommended the increased penalty ultimately imposed, *i.e.,* a period of 52 weeks in the custody of DSHS, Department of Institutions. The record reveals that Whittington's counsel received and reviewed the report before the disposition hearing. While the State might well find it advantageous to adopt more formal procedures, such as those used in the habitual offender statute, we believe that these circumstances do not dictate a finding of denial of due process.

Whittington next assigns error to the court's reliance on the presentence report, a number of letters, and the testimony of the probation counselor, all of which contained hearsay.

Mrs. Whittington, the appellant's mother, was the source of much of the information contained in the presentence report. It states that she told the probation counselor of several fires her son had set over a number of years. The report also contains a history of Whittington's difficulties in group homes, a description of his family problems, and excerpts from neurological and psychiatric reports evaluating Whittington's behavior problems. A number of letters written by persons who had dealt with Whittington contained similar material, which the court considered.

In addition, Mrs. Whittington and the probation counselor testified at the disposition hearing. Mrs. Whittington related to the court that her son had recently started two minor fires in their house. The probation counselor told the court that he had been informed by Mrs. Whittington of an incident in which Whittington destroyed his mailbox with an explosive firecracker, and of Whittington's alleged theft of money from a family guest.

Although the statute provided Whittington with the right to cross-examine witnesses at the disposition hearing, RCW 13.40.150(1), Whittington's attorney did not attempt to cross-examine either the probation counselor or Mrs. Whittington.

■ The admissibility of hearsay testimony in the adjudicatory phase of a juvenile proceeding was addressed in *In re Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967). In that case, the juvenile defendant was found to be a juvenile delinquent on the basis of a complaint that he had made an obscene telephone call. Other than the complainant's statements to the arresting officer, the only evidence consisted of Gault's admission that he made some of the remarks. His admission was later ruled inadmissible. The complainant did not testify at the hearing, and, when her absence was questioned by Gault's mother, the judge

informed her that "'she didn't have to be present at that hearing.'" *In re Gault, supra* at 7. The court ruled that a finding of delinquency based on such hearsay testimony violated the confrontation clause of the sixth amendment to the United States Constitution.

> Absent a valid confession adequate to support the determination of the Juvenile Court, confrontation and sworn testimony by witnesses available for cross–examination were essential for a finding of "delinquency" and an order committing Gerald to a state institution for a maximum of six years.

*In re Gault, supra* at 56.

In a footnote, the court stated that its holding was limited to procedural requirements at the adjudicatory stage of the criminal process, because the problems of preadjudication and postadjudication treatment of juveniles were "unique to the juvenile process". *In re Gault, supra* at 31 n.48. In *In re Harbert,* 85 Wn.2d 719, 538 P.2d 1212 (1975), the Washington Supreme Court held that the Sixth Amendment right to confrontation did not apply in a juvenile declination hearing so as to exclude such evidence as psychological reports, probation reports, or other social agency reports.

Noting the unique nature of the hearing, the court stated:

> In determining whether the essentials of due process and fair treatment were provided in the instant case, it is important to keep in mind the exact nature of a juvenile court transfer hearing. Such a hearing does not result in a determination of delinquency . . .; does not result in a determination of guilt as may a criminal trial; and does not directly result in confinement or other punishment as may both a delinquency hearing and a criminal proceeding. In short, the transfer hearing is not an adversary proceeding.

*In re Harbert, supra* at 725, quoting with approval from *State v. Piche,* 74 Wn.2d 9, 442 P.2d 632 (1968).

A disposition hearing at which a finding of manifest injustice is sought is clearly an adversary proceeding, since

it can result in the imposition of a higher sentence, including incarceration, than would otherwise be permissible. We conclude that such a proceeding must meet the standard set forth in *Gault,* relating to confrontation and cross–examination of witnesses.

■ Although there are no precise rules for determining when a particular hearsay statement violates the right of confrontation, the United States Supreme Court provided some guidance in *Dutton v. Evans,* 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970):

> The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth–determining process in criminal trials by assuring that "the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement." *California v. Green,* 399 U.S. [149,] 161, [26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970)].

*Dutton v. Evans, supra* at 89.

In *State v. Smith,* 85 Wn.2d 840, 540 P.2d 424 (1975), the Washington Supreme Court announced that the chief guidelines to determining admissibility under the confrontation clause to be "(1) reliability of the testimony sought to be admitted, and (2) availability of the source (the out of court declarant) to appear, swear, and be cross–examined." *State v. Smith, supra* at 849.

The testimony of the probation counselor does not raise an issue of constitutional magnitude, since, by failing to exercise his statutory right to cross–examine him, Whittington waived any objections to his testimony.

In addition, Mrs. Whittington's testimony about the fires recently set by her son were corroborative of those portions of the presentence report, attributed to Mrs. Whittington, that described those fires. Because those sections of the report thus possess sufficient indicia of reliability, and because the declarant, Mrs. Whittington, was present at the hearing, their consideration by the court did not violate the confrontation clause. *State v. Boast,* 87 Wn.2d 447, 553 P.2d 1322 (1976); *State v. Smith, supra.*

430

■ The evidence relating to Whittington's propensity for starting fires is, by itself, sufficient to support beyond a reasonable doubt the conclusion that a sentence of community supervision would pose a danger to society. We do not, therefore, decide whether consideration by the court of the balance of the material contained in the presentence report, and letters, violated Whittington's right of confrontation. Any error in its consideration was harmless. *Capen v. Wester,* 58 Wn.2d 900, 365 P.2d 326 (1961).

The disposition is affirmed.

CALLOW, C.J., and JAMES, J., concur.

Reconsideration denied November 12, 1980.