[No. 54665-7.   En Banc.   July 15, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL ALAN CANTRELL, *Petitioner.*

*Scott J. Engelhard* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Jonathan Love, Deputy,* for respondent.

BRACHTENBACH, J.—The trial court granted defendant's motion to dismiss a second degree escape charge on the ground of prosecutorial delay in charging defendant. The Court of Appeals reversed. *State v. Cantrell,* 49 Wn. App. 917, 745 P.2d 1314 (1987). We affirm the Court of Appeals.

Defendant was in custody on a conviction of second degree robbery. He was given a 1-day pass permitting him to leave the detention facility. He did not return until 3 days later on March 11, 1986. The police investigative report was received by the prosecutor's office on March 14. Sometime between April 29 and May 7, the prosecutor received a certified copy of the order placing defendant in custody for the conviction for which he was being held. On May 7 the prosecutor filed the escape charge. Almost 3 months later, on August 5, defendant moved to dismiss the escape charge.

At the hearing on defendant's motion no testimony was taken, no affidavits were filed, neither side filed a brief. Defense counsel stated:

> I'm making the argument on purely equitable grounds. I have no legal authority, but I think the handling of it is a blatant violation of the policy of the Juvenile Justice Act, to treat these things expeditiously, especially, when there's no good reason for this type of delay.

Motion hearing, at 3. We note appellate counsel was not trial counsel.

The juvenile court made no finding of any prejudice to defendant; indeed, the findings and conclusions are silent as to any harm to defendant's interests.

The court entered as a conclusion of law: "[t]hat LJuCR 7.14(b) requires that the prosecutor file a case within 14 days of receipt from the police." The court also concluded that prosecutorial delay "of over two months [*sic*] in filing the escape charge without sufficient reason constitutes unreasonable delay." Conclusion of law 3.

The above conclusion of law referred to LJuCR 7.14(b). That rule is not in the record, but its content appears in the briefs, the opinion of the Court of Appeals as originally filed, the petition for review, and as argued. The difficulty is that everyone relied upon a rule not applicable to this case.

█ Local rules, to be effective, must be filed with the State Administrator for the Courts. "Such rules and amendments become effective only after they are filed as required." GR 7(a). Clear notice of this requirement is provided by JuCR 1.4(d): "[l]ocal rules for juvenile court proceedings must be adopted in accordance with GR 7."

According to the records of the State Administrator for the Courts, the last local rule in point was filed August 2, 1984, denominated as LJuCR 7.14. It is attached hereto as appendix A, denominated herein as the 1984 rule. The rule relied upon and cited through oral argument before this court was not filed until May 6, 1988, and therefore was not applicable because it was not effective until filed. It is attached as appendix B, referred to as the 1988 rule.

The transmittal letter to the Administrator states that the 1988 rule was effective September 1, 1983. That is inconsistent with the 1984 filing; moreover, the 1988 rule was not effective in 1983 because of JuCR 1.4(d) and GR 7(a). Apparently the Court of Appeals became aware of this error after filing its opinion; it amended its opinion so that the published text reflected the 1984 rule. To state it

mildly, it is distressing that the parties, through three levels of court, did not ascertain which rule was applicable.

The 1988 rule, the one relied upon heretofore, permits dismissal if there has been an unreasonable delay in referral of the offense by the *police to the prosecutor*. It creates a presumption of unreasonable delay if more than 14 days elapse after the completion of the police investigation before referral to the prosecutor. The 1988 rule then requires a balancing of four elements, including the impact of the delay on the ability to defend against the charge. Even though the 1988 rule, thought below to be applicable, referred *only* to delay in referral from the police to the prosecutor, the juvenile court imposed the same time limit on the prosecutor. Specifically, conclusion of law 3 held that the rule required the prosecutor to file a case within 14 days of receipt of the file from the police. That conclusion was plainly in error.

The 1984 rule is confusing. It speaks of delay in *referral* of an offense to the court, rather than filing an information. RCW 13.40.070(3), (4), (5); JuCR 7.1. While the rule refers to unreasonable delay in referring the case to the court, the rule only defines unreasonable delay in referral from the police to the prosecutor.

Given this record and the state of the rules, we confine our analysis to CrR 8.3(b). Superior Court Criminal Rules apply in juvenile offense proceedings and when not inconsistent with juvenile court rules. Local rules apply only when not inconsistent with juvenile court rules. JuCR 1.4(b), (c).

■ CrR 8.3(b) authorizes dismissal of a criminal prosecution "in the furtherance of justice". Such dismissal is an extraordinary remedy. *State v. Baker*, 78 Wn.2d 327, 332, 474 P.2d 254 (1970).

Dismissal for delay in bringing criminal charges is rooted in due process. *United States v. Lovasco*, 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977). *Lovasco* points out that "proof of prejudice is generally a necessary but not

sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Lovasco,* 431 U.S. at 790. The narrow and restricted meaning of *Lovasco* is clear: "We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *Lovasco,* 431 U.S. at 796.

Finally and importantly *Lovasco* recognizes the underlying separation of powers issue:

> But the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." *Rochin v. California,* 342 U.S. 165, 170 [96 L. Ed. 183, 72 S. Ct. 205, 25 A.L.R.2d 1396] (1952). Our task is more circumscribed. We are to determine only whether the action complained of—here, compelling respondent to stand trial after the Government delayed indictment to investigate further—violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," . . . and which define "the community's sense of fair play and decency," . . .

(Citation omitted.) *Lovasco,* 431 U.S. at 790.

This court applies the *Lovasco* analysis to juvenile proceedings. In *State v. Calderon,* 102 Wn.2d 348, 684 P.2d 1293 (1984), the offense was committed while the defendant was a juvenile, but charges were not filed until defendant was an adult and tried as such. In affirming conviction as an adult, the court relied on *Lovasco,* stating: "[t]he defendant must show that he was prejudiced by the delay and, in making its due process inquiry, the court must consider the reasons for the delay as well as the prejudice to the accused." *Calderon,* at 352 (citing *United States v. Lovasco,* 431 U.S. 783, 790, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977)). The court continued at page 353:

Simply establishing prejudice is not enough, however. To find a due process violation, the court must also consider the State's reasons for the delay. *Lovasco.* If the State is able to justify the delay, the court must undertake a further balancing of the State's interest and the prejudice to the accused. *See United States v. Saunders,* 641 F.2d 659 (9th Cir. 1980). Ultimately, the test suggested by the United States Supreme Court is "whether the action complained of . . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions". *Lovasco,* at 790.

*State v. Calderon, supra* at 353.

Similarly, in *State v. Alvin,* 109 Wn.2d 602, 746 P.2d 807 (1987), dismissal was not justified even though preaccusatorial delay resulted in loss of juvenile court jurisdiction.

We repeat and emphasize that CrR 8.3(b) "is designed to protect against arbitrary action or governmental misconduct and not to grant courts the authority to substitute their judgment for that of the prosecutor." *State v. Starrish,* 86 Wn.2d 200, 205, 544 P.2d 1 (1975); *see also State v. Burri,* 87 Wn.2d 175, 183, 550 P.2d 507 (1976).

It is true that the State offered no reason for the minimal delay here except to note the delay in receipt of the certified order of the confinement from which defendant escaped. Nonetheless, the necessity of explanation had never arisen. The defendant simply made no showing of any prejudice. The only passing reference to possible prejudice came in defense counsel's opening argument:

[T]here appears to be no reason why this couldn't have been filed while he was completing the remainder of his sentence and have any additional time that would have been imposed on him for the Escape charge just tacked onto his sentence, rather than getting out, spending months out, having a job, having other things going on in his life, and then he's hauled back in on this.

Motion hearing, at 3. Such unsupported vague allegation of interference with defendant's time does not constitute a showing of prejudice. Inconvenience and disruption of one's

daily life are a necessary consequence of being charged with an offense.

In his petition for review, the defendant states:

The precise issue presented here is whether the trial court can dismiss a case in the interests of justice where the prosecution has undermined the unique purposes of the juvenile justice system by unjustifiably failing to file charges for almost two months.

Petition for Review, at 3. No citation to a statute is made, but defendant cites *State v. Rice,* 98 Wn.2d 384, 655 P.2d 1145 (1982), *State v. Escoto,* 108 Wn.2d 1, 735 P.2d 1310 (1987), and *State v. Schaaf,* 109 Wn.2d 1, 743 P.2d 240 (1987) in support of his assertion. Those cases recognize the unique nature of juvenile proceedings, contrasted with adult charges, and note the rehabilitative goal of the juvenile act. However, neither the case law nor RCW 13.40 stand for the broad principle asserted. The declared purposes of the Juvenile Justice Act of 1977 are twofold, that is, that juveniles be accountable for their offenses and that the system respond to the needs of youthful offenders. RCW 13.40.010(2).

It may be that an unreasonable and inexcusable delay in filing charges against a juvenile could so seriously impair and frustrate the purposes of the act as a whole that a court would be justified in dismissing the charges. This is not such a case. It would require unusual circumstances to merit dismissal solely on the grounds of frustration of the purposes of the act. We need not speculate upon what would be sufficient. We reiterate the criteria of *State v. Calderon, supra,* and emphasize the danger of the court attempting to monitor the daily activities and decisions of a prosecutor's office. That is why the defendant must make a preliminary showing of prejudice before the State must justify what might appear to be an unreasonable and prejudicial preaccusatory delay.

The Court of Appeals is affirmed.

## APPENDIX A

LJuCR 7.14. Motions—Juvenile Offense Proceedings

(a) Generally. All motions, including motions to suppress evidence, motions regarding admissions, and other motions requiring testimony, shall be heard at the time of trial unless otherwise set by the court. Motions shall be served on all parties and filed with the court coordinator, together with a brief which shall include a summary of the facts upon which the motions are based, not later than five days before the adjudicatory hearing. Reply briefs shall be served and filed with the court coordinator not later than noon of the court day before the hearing.

(b) To dismiss for Delay in Referral of Offense. The court may dismiss an information if it is established that there has been an unreasonable delay in referral of an offense to the court. For purposes of this rule, a delay of more than two weeks from the date of the completion of the police investigation of the offense to the time of receipt of the referral by the prosecutor shall be deemed prima facie evidence of an unreasonable delay. Failure to comply with this rule shall constitute an affirmative defense which must be raised by motion not less than one week before trial. Cause for delay may be shown by affidavit.

## APPENDIX B

### LJuCR 7.14 Motions—Juvenile Offense Proceedings

(a) Generally. All motions, including motions to suppress evidence, motions regarding admissions, and other motions requiring testimony shall be heard at the time of trial unless otherwise set by the court. Motions shall be served on all parties and filed with the court coordinator, together with a brief which shall include a summary of the facts upon which the motions are based, not later than five days before the adjudicatory hearing. Reply briefs shall be served and filed with the court coordinator not later than noon of the court day before the hearing.

(b) To Dismiss for Delay in Referral of Offense. The court may dismiss an information if it is established that there has been an unreasonable delay in referral of the offense by the police to the prosecutor. For purposes of this rule, a delay of more than two weeks from the date of completion of the police investigation of the offense to the time of receipt of the referral by the prosecutor shall be deemed prima facie evidence of an unreasonable delay. Upon a prima facie showing of unreasonable delay the court shall then determine whether or not dismissal or other appropriate sanction will be imposed. Among those factors otherwise considered the court shall consider the following: (1) the length of the delay; (2) the reason for the delay; (3) the impact of the delay on the ability to defend against the charge; and (4) the seriousness of the alleged offense. Unreasonable delay shall constitute an affirmative

defense which must be raised by motion not less than one week before trial. Such motion may be considered by affidavit.

PEARSON, C.J., and DOLLIVER, ANDERSEN, CALLOW, and DURHAM, JJ., concur.

DORE, J. (dissenting)—I dissent.

The majority concludes that a delay of 2 months in charging a juvenile with an offense does not deny due process and that dismissal of the case was therefore not necessary. However, the majority fails to distinguish between the standard under CrR 8.3(b) and constitutional due process, particularly in the context of a juvenile proceeding. In addition, the majority fails to consider the critical role of the trial court in the analysis of this case. That court, not this one, deals with juveniles and the juvenile justice system on a daily basis. In deciding what justice requires in a juvenile case, both the law and common sense require us to defer to the trial court's discretion.

## CrR 8.3(b) DOES NOT REQUIRE A DUE PROCESS VIOLATION

Dismissal of a criminal prosecution is governed by CrR 8.3(b), which provides:

> The court on its own motion in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution and shall set forth its reasons in a written order.

We have held that a case may be dismissed under the rule where there has been a showing of arbitrary action or governmental misconduct. We have noted that that misconduct need not be intentional; mismanagement of the prosecution by the State can justify dismissal. *State v. Dailey,* 93 Wn.2d 454, 457, 610 P.2d 357 (1980); *State v. Burri,* 87 Wn.2d 175, 550 P.2d 507 (1976); *State v. Sulgrove,* 19 Wn. App. 860, 578 P.2d 74 (1978).

Contrary to the majority's assumption, we have not held that dismissal under CrR 8.3(b) is required *only* where due

process has been violated. Naturally, a case must be dismissed if due process would be violated by allowing it to proceed. *See Dailey,* at 458. However, the rule provides that a trial judge may dismiss "in the furtherance of justice". While all cases in which due process is violated are cases in which justice would be served by dismissal, it does not follow that justice requires dismissal *only* in those cases involving a due process violation. Justice may well require dismissal even where the State's conduct is not so extreme as to violate constitutional due process standards.

This is clearly the case in the juvenile context. "Justice" in a juvenile case requires more than the minimal due process afforded in ordinary criminal cases because the purpose of a juvenile case extends beyond punishing the offender.

It is indisputable that the juvenile justice system is not concerned exclusively with punishment. Rehabilitation of the juvenile, steering him carefully and firmly away from the life of a criminal, is equally if not more important. *State v. Rice,* 98 Wn.2d 384, 393, 655 P.2d 1145 (1982). This difference has led the Legislature to distinguish between juvenile and adult prosecutions in a number of ways, particularly regarding the promptness with which the State must act in prosecuting a juvenile case. The speedy trial rule for adults is 60 to 90 days. CrR 3.3(c). The speedy trial period for juveniles is 30 to 60 days. JuCR 7.8(b). The sentencing period for adults is 40 days. RCW 9.94A.110. For juveniles, that period is 14 days. JuCR 7.12(a). There is no time limit beyond the statute of limitations and due process on the filing of an information against an adult. In juvenile cases, King County Local Juvenile Court Rule 7.14(b) requires that police refer juvenile cases for charging within 14 days of completing the investigation.

It follows that "justice may require" dismissal of a juvenile proceeding under CrR 8.3(b) when the State's delay interferes with the rehabilitative purpose of the juvenile justice system. Doing justice to a juvenile involves more than mere fairness. It does not require coddling, but it does

require careful attention to the particular juvenile's needs and abilities. If the State's delay interferes with a particular juvenile's rehabilitation, justice would be furthered by dismissal. That appears to be the conclusion the trial judge drew in this case. We should not disturb that ruling.

## WE REVIEW FOR MANIFEST ABUSE OF DISCRETION

The terms of CrR 8.3(b) and the standards we have articulated to govern it necessarily place a premium on the good judgment of the trial judge. Consequently, we review dismissals under CrR 8.3(b) only for "manifest abuse of discretion". *Dailey*, at 456–57. A trial judge abuses his discretion only if no reasonable person would take the position he does. *Purser v. Rahm*, 104 Wn.2d 159, 174, 702 P.2d 1196 (1985); *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 584, 599 P.2d 1289 (1979).

The abuse of discretion standard is especially important in a CrR 8.3(b) dismissal of a juvenile case. As I have argued above, doing justice to a juvenile involves more than minimal due process protections. That difference in juvenile cases requires us to be especially reluctant to override a trial judge's discretion in such a case. A court hearing an appeal alleging a due process violation can ordinarily determine whether the claim is well founded because that defect, if present, will appear in the record. However, a trial judge determining what would further justice in a juvenile case makes a much more complex judgment, one which involves an evaluation of the young person before him. Only the trial court can be sufficiently familiar with a juvenile's situation to be able to determine whether justice would be served by dismissal under CrR 8.3(b). Therefore, we should be especially reluctant to conclude in a juvenile case that no reasonable person could have concluded that justice would be furthered by dismissal.

## THE TRIAL COURT JUDGE DID NOT ABUSE HIS DISCRETION

The record in this case shows that during the State's delay in filing this information, Cantrell was released from

detention on the previous charge and had found a job. This fact was brought to the attention of the trial judge and must have been a factor in his concluding that to dismiss the charge for escape would further the interests of justice. Cantrell had evidently succeeded in at least beginning the process of rehabilitation. On such a record, I do not see how the majority can conclude that no reasonable person would have reached the conclusion of the trial judge. The trial court judge did not abuse his discretion in dismissing this case.

CONCLUSION

Because there was no abuse of discretion in the trial judge's conclusion that justice would be served by the dismissal of this case, I would reverse the decision of the Court of Appeals.

UTTER and GOODLOE, JJ., concur with DORE, J.