73 P.3d 1029 (2003)
117 Wash.App. 913
STATE of Washington, Respondent,
v.
Michael A. MORO, Appellant.
Nos. 21445-1-III, 21976-3-III.
Court of Appeals of Washington, Division 3, Panel Six.
July 31, 2003.
*1030 Susan M. Gasch, Spokane, WA, for Appellant.
Kevin M. Korsmo, Deputy Prosecuting Attorney, Spokane, WA, for Respondent.
KURTZ, J.
Michael Moro pleaded guilty to two counts of fourth degree assault, one count of forgery, and one count of second degree theft. He seeks accelerated review of a 60-week manifest injustice disposition imposed on the forgery and second degree theft. He contends the court's finding regarding his escalating criminal behavior is not supported by the record, the disposition is clearly excessive, and the court's sua sponte imposition of the manifest injustice violated his due process rights. In a related appeal, Mr. Moro challenges the trial court's authority under RAP 7.2(e) to amend the order of disposition to specify a minimum term of confinement. We affirm the trial court's declaration of manifest injustice, but we reverse the order of disposition because the trial court did not state a basis for the length of the sentence that the court imposed. Additionally, we hold the trial court could not enter the order setting the minimum term without permission from this court. The case is remanded for resentencing.

FACTS
Michael Moro was charged with three counts of fourth degree assault, one count of forgery, one count of second degree theft, one count of third degree theft, and one count of minor in possession (MIP). Mr. Moro entered a guilty plea to the forgery, the second degree theft, and two counts of fourth degree assault. In return, the prosecutor dismissed the third degree theft, the MIP, and one count of fourth degree assault. The prosecutor agreed to take no action on several referrals for obstruction, fourth degree assault, and second degree trespass. The standard range disposition for the forgery and second degree theft charges was 0 to 30 days.
*1031 The forgery and second degree theft occurred in February 2002 and arose out of Mr. Moro using a check and a credit card belonging to his father. The assaults were two separate incidents that occurred in April 2002 and involved Mr. Moro punching a young man several times in the face, and Mr. Moro punching his father once in the face.
Mr. Moro's criminal history included a 1999 deferred disposition for reckless burning and second degree burglary, as well as convictions for two counts of first degree criminal trespass, third degree theft in 2000, and unlawful possession of a firearm in 2001. The probation counselor indicated that the probation staff discussed whether to seek a manifest injustice due to Mr. Moro's failure to progress in numerous rehabilitative programs and submit to parental authority. Mr. Moro had been in local programs at Daybreak, Morning Star, and Crosswalk without success. The probation counselor recommended 30 days of detention on each count, totaling 120 days, and placement at Tamarack, a therapeutic facility, if an occupancy became available.
Mr. Moro's father described the family's attempts to help Mr. Moro through various rehabilitative programs. He stated that Mr. Moro needed a minimum commitment of six months (24 weeks) to one year at Tamarack to deal with his problems, which included attachment issues and conduct disorders.
Defense counsel asked for a total of 60 days incarceration, with release to Tamarack. The court declared a manifest injustice on the two felony counts and imposed 60 weeks (26 weeks on the forgery and 34 weeks on the second degree theft). The court cited Mr. Moro's pattern of runaway behavior, his refusals to work with probation and undergo substance abuse treatment, lack of parental control, and his escalating criminal behavior as reasons for the manifest injustice determination.
The next day, defense counsel asked the court to reconsider the disposition, pointing out that he had no opportunity to prepare an adequate defense to a manifest injustice sentence and that the sentence should be no longer than six months because that was what the evidence indicated was necessary for treatment. The court stood by its disposition. Mr. Moro moved for accelerated review of the manifest injustice disposition, which we granted.

ANALYSIS
Manifest Injustice. Mr. Moro contends the court erred by finding that he had an escalating pattern of criminal behavior which justified the manifest injustice sentence. A juvenile court may impose a disposition outside the standard range if it finds that a disposition within the standard range would effectuate a manifest injustice. RCW 13.40.0357, .160(2). "`Manifest injustice' means a disposition that would either impose an excessive penalty on the juvenile or would impose a serious and clear danger to society in light of the purposes of the Juvenile Justice Act of 1977." State v. M.L., 134 Wash.2d 657, 660, 952 P.2d 187 (1998). "These purposes include protection of the citizenry and provision of necessary treatment, supervision and custody of juvenile offenders." State v. Duncan, 90 Wash.App. 808, 812, 960 P.2d 941, review denied, 136 Wash.2d 1015, 966 P.2d 1278 (1998) (citing RCW 13.40.010(2)(a),(f)). Thus, the need for treatment or rehabilitation, the need to protect society from dangerous offenders, and the previous failure of noncustodial treatment or supervision are valid reasons that support a sentence outside the standard range. State v. Tauala, 54 Wash.App. 81, 86, 771 P.2d 1188 (1989).
To uphold a manifest injustice disposition, this court must find that (1) the reasons supplied by the disposition court are supported by the record; (2) those reasons clearly and convincingly support the conclusion that a disposition within the standard range would constitute a manifest injustice; and (3) the sentence imposed was neither clearly excessive, nor clearly too lenient. RCW 13.40.230(2); State v. K.E., 97 Wash. App. 273, 279, 982 P.2d 1212 (1999) (quoting M.L., 134 Wash.2d at 660, 952 P.2d 187). The disposition court's findings of fact are reviewed under a clearly erroneous standard and will be reversed only if not supported by substantial evidence. State v. S.H., 75 Wash. *1032 App. 1, 9, 877 P.2d 205 (1994). Whether an aggravating factor justifies a departure from the standard range is a question of law. State v. Scott, 72 Wash.App. 207, 213, 866 P.2d 1258 (1993), aff'd sub nom. State v. Ritchie, 126 Wash.2d 388, 894 P.2d 1308 (1995).
Mr. Moro argues that his criminal behavior was not escalating, pointing to the fact that his criminal history consisted of misdemeanors and his behavior neither caused nor threatened serious bodily injury. However, a close reading of the record undermines his argument. Mr. Moro's criminal history consists of a reckless burning and second degree burglary from 1999. In 2000, he was convicted of first degree criminal trespass and third degree theft; and in 2001 he was convicted of unlawful possession of a firearm. In 2002, he committed two assaults and two felonies. The record shows that the assaults were the result of Mr. Moro punching his father and another person in the face. Such violence was not present in his prior crimes. Compared to his misdemeanor history, Mr. Moro's current offenses clearly demonstrate escalating criminal behavior. The court's reasons support the manifest injustice disposition. See State v. S.S., 67 Wash.App. 800, 840 P.2d 891 (1992) (chemical dependency, lack of parental control, escalating criminal behavior, and previous unsuccessful attempts at community-based treatment justify manifest injustice disposition).
Due Process. Citing State v. Gutierrez, 37 Wash.App. 910, 916, 684 P.2d 87 (1984), Mr. Moro contends that due process applies when a trial court, sua sponte, declares a manifest injustice, and therefore he was entitled to notice of the court's intent to make such a finding. The State responds that Mr. Moro received adequate notice of a possible manifest injustice finding during the plea colloquy.
Due process requires that a defendant at a sentencing hearing be provided the opportunity to refute the evidence presented and that the evidence be reliable. State v. Strauss, 119 Wash.2d 401, 418-19, 832 P.2d 78 (1992); State v. Pollard, 66 Wash.App. 779, 784-85, 834 P.2d 51 (1992). However, due process does not require that an adult defendant receive notice that the court is considering imposing an exceptional sentence. No such notice is required because an exceptional sentence is a possibility in all sentencings. State v. Falling, 50 Wash.App. 47, 49-50, 747 P.2d 1119 (1987); see State v. Wood, 57 Wash.App. 792, 798, 790 P.2d 220 (1990); State v. Holyoak, 49 Wash.App. 691, 697, 745 P.2d 515 (1987); State v. Dennis, 45 Wash.App. 893, 898, 728 P.2d 1075 (1986). The courts reason that the defendant receives notice of the possibility of an exceptional sentence during the plea colloquy. However, there are no juvenile cases in Washington holding that the court's colloquy during a guilty plea constitutes sufficient notice of the possibility of a manifest injustice disposition. A summary of the relevant cases is provided below.
In State v. Whittington, 27 Wash.App. 422, 618 P.2d 121 (1980), the defendant appealed a manifest injustice disposition, arguing the State should have been required to provide him with prior written notice that it intended to seek a manifest injustice. He claimed that due process required written notice of the specific charges and factual allegations to be considered at the hearing to permit adequate preparation. Analogizing a manifest injustice disposition hearing to adult penalty enhancement hearings, the court held that the defendant "was entitled to all the procedural safeguards normally required in any criminal trial" and "[t]his places no more burden on the State than exists when the State seeks a deadly weapon finding." Id. at 426, 618 P.2d 121. The court then concluded that Mr. Whittington's due process rights were not violated because the State had informed him after trial that it intended to seek a manifest injustice, and the probation counselor had submitted a presentence report recommending a manifest injustice.
A few years later, Division One of this court, relying on Whittington, held that a juvenile defendant was given adequate notice of the possibility of a manifest injustice because: (1) the plea statement indicated probation's intent to seek a manifest injustice, (2) defense counsel stated during the plea that his client was "`very aware of the fact that the Probation Counsellor [sic] is recommending *1033 a Manifest Injustice,'" (3) and during the court's colloquy, the court informed the defendant that it could send him "`to the Institution for a good deal longer.'" State v. Murphy, 35 Wash.App. 658, 665-66, 669 P.2d 891 (1983).
The next year, Gutierrez cited Whittington, stating in dicta that a defendant must be given reasonable notice when the trial court raises sua sponte the issue of a manifest injustice finding. In Gutierrez, after the State recited the defendant's criminal history and recommended a standard range sentence of 30 days, the court asked, "`Can you tell me why I shouldn't send him to prison until he's 21?'" Gutierrez, 37 Wash.App. at 911, 684 P.2d 87. Pointing to the defendant's criminal history, the court sentenced the juvenile to one year in a juvenile institution. Id. at 912, 684 P.2d 87. Citing Whittington and RCW 13.40.140(7),[1] the Gutierrez court remanded the disposition, stating:
It has been held when a manifest injustice finding is sought by the state, the juvenile is entitled to the same high standards of due process as is held to apply in a deadly weapon finding or a habitual criminal proceeding. We hold the same considerations apply when the court, sua sponte, raises the issue. As a matter of fundamental fairness, Mr. Gutierrez should have been given an opportunity, after reasonable notice, to defend against such a finding.
Gutierrez, 37 Wash.App. at 916, 684 P.2d 87 (citation omitted). In State v. Beard, 39 Wash.App. 601, 606, 694 P.2d 692 (1985), the court held that there was no due process violation where the State orally informed the defendant of its intent to seek a manifest injustice, the probation counselor recommended a disposition outside the standard range, and the court granted defense counsel two continuances in order to give him additional time to prepare a response to the presentence report.
In Falling, 50 Wash.App. at 51-52, 747 P.2d 1119, Mr. Falling cited Gutierrez, and argued that the notice requirement of the Juvenile Justice Act for finding a manifest injustice should apply to the finding of an exceptional sentence under the adult Sentencing Reform Act of 1981(SRA). The court found that the SRA does not contain the same notice requirement as the Juvenile Justice Act, so under the SRA the plea colloquy was sufficient notice that an exceptional sentence was possible.
None of these cases are directly on point. In all of the cases, except Gutierrez, the defendant received multiple forms of notice of a possible manifest injustice, including notice from probation, the State, or the court. In Gutierrez, the defendant received no notice of the possibility of a manifest injustice, but the court's comments on this issue were dicta. In addition, the court in Gutierrez, relied on the requirement in RCW 13.40.140(7), that a juvenile receive "adequate notice" in "adjudicatory proceedings." It has since been determined that preliminary or posttrial proceedings are not adjudicatory hearings under the Juvenile Justice Act. State v. Linares, 75 Wash.App. 404, 408, 880 P.2d 550 (1994). In Linares, the court reasoned:
Although the term is not defined in the statute, it is clear from other portions of the statute that "adjudicatory hearing" was intended to refer to proceedings in which the court determines a juvenile's guilt or innocence, not to preliminary or posttrial proceedings. See, e.g., RCW 13.40.130(3) ("[a]t the adjudicatory hearing it shall be the burden of the prosecution to prove the allegations of the information beyond a reasonable doubt"); RCW 13.40.130(7) ("following an adjudicatory hearing [the court] may request that a predisposition study be prepared to aid the court in its evaluation of the matters relevant to disposition of the case"); RCW 13.40.130(8) ("[t]he disposition hearing shall be held within fourteen days after the adjudicatory hearing or plea of guilty").
Id. Thus, the notice requirements of that statute do not apply to disposition hearings.
*1034 In this case, both probation and the State considered asking for a manifest injustice disposition, but ultimately did not. There was no specific notice that a manifest injustice disposition was being considered by the court, but Mr. Moro was advised during the plea colloquy that "the court doesn't have to follow anybody's recommendations on the sentence." Report of Proceedings at 7. Just as in proceedings under the SRA, a manifest injustice disposition is a possibility in all juvenile sentencings. RCW 13.40.160(1). The statute does not require express notice to a defendant that the court is considering imposing a manifest injustice sentence. Mr. Moro received notice that the court might not follow the sentence recommendations. That was adequate notice for due process purposes.
Length of Sentence. Mr. Moro also contends that the 60-week disposition was "clearly excessive." Once a juvenile court determines that a disposition within the standard range would effect a manifest injustice, the discretionary process of determining the length of a manifest injustice disposition necessarily involves, at some point, picking a number. But courts are cautioned about picking a number "`out of thin air.'" State v. B.E.W., 65 Wash.App. 370, 375, 828 P.2d 87 (1992) (quoting State v. Wood, 42 Wash. App. 78, 84, 709 P.2d 1209 (1985)). While there is no specific criteria for choosing the length of a disposition, a manifest injustice disposition is clearly excessive "only when it is not justified by any reasonable view of the record." State v. S.H., 75 Wash.App. 1, 13, 877 P.2d 205 (1994).
In this case, the court ordered 26 weeks on the forgery and 34 weeks on the second degree theft, to run consecutively, for a total of 60 weeks or 15 months. The court cited Mr. Moro's pattern of running away, his refusal to cooperate with probation, his failure to utilize any of the local treatment services offered to him, the lack of parental control, and his escalating criminal behavior to justify the disposition. In response, Mr. Moro argues that the only evidence as to length of a treatment program was six months.
The State concedes that the basis for the length of the sentence is unclear and that remand is necessary. Based upon that concession, we remand for reconsideration of the length of the disposition.
Minimum Term. After Mr. Moro's appeal was filed, our Supreme Court decided that RCW 13.40.030 and RCW 13.40.160 authorized the court to set the minimum term for a juvenile confined to a manifest injustice disposition. State v. Beaver, 148 Wash.2d 338, 347-48, 60 P.3d 586 (2002). Prior to Beaver, many courts believed that the setting of a minimum term was an administrative matter for the Department of Social and Health Services. On its own motion, the trial court held a hearing and specified Mr. Moro's minimum term. The court characterized the correction as a clerical error under CrR 7.8(a) and RAP 7.2(e).
RAP 7.2(a) provides that after review is accepted by the appellate court, a trial court has authority to act only to the extent provided in RAP 7.2, "unless the appellate court limits or expands that authority as provided in rule 8.3." RAP 7.2(e) requires a trial court to seek the appellate court's permission before making a determination that would change a decision currently under review. In Mr. Moro's second appeal, the crux of the problem is to determine what "decision" is being reviewed by this court in his first appeal. If "decision" under RAP 7.2(e) is defined narrowly as those portions of the trial court's subsequent ruling that are being challenged on appeal, such as the manifest injustice determination, then the trial court's amended order setting a minimum term may have been proper. On the other hand, if "decision" is construed more broadly to mean the original order of disposition, independent of the issues raised by Mr. Moro, then the trial court's modification was beyond its authority and permission should have been obtained from this court pursuant to RAP 7.2(e).
RAP 7.2 specifically lists the judgment and sentence as "decisions" that can be appealed. This rule suggests that "decisions" is, in fact, a term of art. In such a case, the term "decision" in RAP 7.2(e) also is a term of art and refers to the judgment *1035 being appealed. Accordingly, we hold the trial court could not enter the order setting the minimum term without permission from this court.
Disposition. In conclusion, we affirm the trial court's declaration of manifest injustice, but we reverse the order of disposition because the trial court did not state a basis for the length of the sentence that the court imposed. Additionally, we hold the trial court could not enter the order amending the order of disposition and setting the minimum term without permission from this court. Mr. Moro's case is remanded for resentencing.
WE CONCUR: SCHULTHEIS and SWEENEY, JJ.
NOTES
[1] RCW 13.40.140(7) provides: "In all adjudicatory proceedings before the court, all parties shall have the right to adequate notice...."