132 P.3d 1116 (2006)
132 Wash.App. 533
STATE of Washington, Respondent,
v.
J.V., Appellant.
No. 56926-1-I.
Court of Appeals of Washington, Division 1.
April 24, 2006.
*1117 Cheryl D. Aza, Washington Appellate Project, Seattle, WA, for Appellant.
Michael J. Pellicciotti, King County Pros. Office, Seattle, WA, for Respondent.
ELLINGTON, J.
¶ 1 Sixteen-year-old J.V. opted into juvenile treatment court after being charged with assault and taking a motor vehicle. He was later terminated from the program, and the court imposed a manifest injustice disposition. J.V. challenges the disposition, contending (1) he was denied due process because the treatment court contract did not notify him of the possibility of a disposition above the standard range, (2) the record does not support the seven aggravating factors relied upon, and (3) the sentence was excessive.
¶ 2 We hold that due process does not require a treatment court contract to provide explicit notice of the possibility of a manifest injustice disposition. We reject J. V.'s contention that the court could not consider his *1118 performance in the treatment program for purposes of disposition. We agree with J.V. that statements he made during treatment about drug use were inadmissible, and that failure to satisfy the statutory mitigating factor of having one crime-free year does not constitute the aggravating factor of recent criminal history. But because the disposition rested on J.V.'s need for treatment, which was amply demonstrated, we affirm.

FACTS
¶ 3 On February, 2, 2004, J.V. assaulted his grandmother, and was charged with fourth degree assault. A methamphetamine and marijuana user, he was permitted to enter juvenile treatment court. Drug treatment courts offer a preadjudicatory rehabilitative opportunity for nonviolent, substance abusing offenders through "intense judicially supervised treatment; mandatory periodic drug testing; and the use of appropriate sanctions and other rehabilitative services."[1] Successful treatment under the program will result in dismissal of charges.
¶ 4 J.V. performed well for four months, but in December 2004, he violated the treatment court conditions, and on January 19, 2005, he was charged with taking a motor vehicle without permission (TMV).
¶ 5 At J.V.'s request, the court agreed to address the TMV charge in treatment court also. The court ordered a minimum four-month supervised treatment program, to include drug testing, weekly Narcotics Anonymous/Alcoholics Anonymous meetings, counseling, and participation in school/employment. J.V. signed an agreement detailing these conditions, waiving his rights to speedy trial and to testify, and stipulating that the police report would form the sole basis for any adjudication should he be terminated from treatment court. The contract listed possible sanctions for violations, including termination from the program and imposition of sentence.
¶ 6 In April, J.V. was placed in in-patient treatment. He left without permission the following week, and a warrant was issued for his arrest. The court terminated J.V. from the treatment court program for multiple violations, and found him guilty of both charges, based upon the police reports.
¶ 7 J.V.'s probation counselor recommended a standard range sentence on the assault charge (30 days), and a manifest injustice disposition of 30 to 40 weeks on the TMV charge, based chiefly on J.V.'s need for more structured treatment. At the disposition hearing, the court found seven aggravating factors, each independently justifying a manifest injustice disposition: (1) J.V. had failed the treatment court program; (2) J.V. had a recent criminal history; (3) the standard range was too lenient; (4) J.V.'s criminal behavior was escalating; (5) J.V. was at high risk to reoffend; (6) J.V.'s grandmother was unable to provide adequate control over him, and (7) J.V.'s failure in treatment court had established that he needed treatment in a structured facility. The court found one mitigating factor, that J.V. had been successful for a four month period of the treatment court program.
¶ 8 The court imposed a standard range disposition of 30 days for the assault charge, and a manifest injustice disposition of 30 to 40 weeks for the TMV.
¶ 9 J.V. appeals the manifest injustice disposition.

ANALYSIS
¶ 10 Due Process. J.V. argues he was denied due process because the treatment court contract did not advise him of the possibility of a manifest injustice disposition.
¶ 11 The treatment court contract stated in part:
I understand that if I fail to follow the terms of my agreement, the Judge may impose sanctions on me, which may include any or all of the following:
Time in custody, community service, increased drug testing, attend extra AA/NA meetings, complete an in-patient treatment program, repeat my current phase of treatment, termination [from] the Treatment Court Program and sentence *1119 imposed, write an essay, and/or observe Adult Treatment Court.[[2]]
This language clearly informed J.V. that if he failed in the treatment court program, sentence could be imposed. He also knew this by way of his stipulation to be tried on the basis of the police report.
¶ 12 The contract did not expressly advise J.V. that a manifest injustice disposition was a possibility, but notice of a potential punishment is adequate for due process purposes where the punishment is authorized in a relevant statute.[3] The Juvenile Justice Act (JJA), chapters 13.04 and 13.40 RCW, govern the operation of the juvenile courts.[4] Under the JJA, any offense is subject to a disposition above the standard range "[i]f the court concludes, and enters reasons for its conclusion, that disposition within the standard range would effectuate a manifest injustice"[5] such that the standard disposition would impose a serious and clear danger to society.[6] The statutes clearly provide notice that a manifest injustice disposition is a possibility in all juvenile sentences.[7] This notice satisfies due process.
¶ 13 Aggravating Factors. J.V. challenges each of the seven aggravating factors used to support the manifest injustice disposition. A finding of manifest injustice will be upheld if substantial evidence[8] supports the reasons given, those reasons clearly and convincingly[9] support the disposition, and the disposition is not too excessive or too lenient.[10] The disposition court must consider whether mitigating and/or aggravating factors exist,[11] and may consider both *1120 statutory and nonstatutory factors.[12] At the disposition hearing "all relevant and material evidence ... may be received by the court."[13]
¶ 14 Need for Treatment. In enacting the JJA, the legislature's intent was, in part, to "respond[] to the needs of youthful offenders" by providing "necessary treatment."[14] It is thus proper for a trial court to consider a juvenile's need for treatment in considering a manifest injustice determination.[15] Further, an extended period of structured residential care and specialized treatment may be appropriate where a juvenile is considered a high risk to reoffend.[16]
¶ 15 The court found J.V.'s need for treatment was an aggravating factor supporting a manifest injustice disposition:
Respondent needs treatment in a structured facility. Respondent has shown throughout the course of Treatment Court that he is not amenable to community supervision, and should not be placed in the community.
....
The court has considered that community resources utilized to facilitate the Respondent's sobriety and lawful behavior have been effectively exhausted, and that the services provided thus far have been wholly ineffective, and finds beyond a reasonable doubt that Respondent needs a structured and disciplined environment to address his treatment needs. The court finds the JRA would be most appropriate.[[17]]
¶ 16 The record supports these findings. The juvenile probation counselor (JPC) reported that J.V. failed in all aspects of the 12-month treatment court program, despite being provided with a mentor, with outpatient substance abuse and mental health counseling, and with inpatient substance abuse treatment. The JPC testified that a manifest injustice disposition of 30 to 40 *1121 weeks would allow participation in drug and alcohol abuse and possibly mental health programs at either Maple Lane School or Greenhill School, then transition to Park Creek Group Home, where the program offers help with reintegration into the community. The JPC noted that a shorter disposition would not provide the treatment J.V. required, but that a disposition of 52 to 65 weeks would be unnecessarily long. This is clear and convincing evidence of J.V.'s need for treatment in a structured, institutional setting for the recommended 30 to 40 week period.
¶ 17 J.V. argues, however, that under the contract, his performance in the treatment court program cannot be the basis for a manifest injustice disposition. He relies on the following language in the contract:
I agree to sign any and all releases necessary to monitor my progress in the Treatment Court Program. Said information shall not be utilized by the prosecutor for any prosecution, but may be considered by the court in deciding my ability to continue participation in Treatment Court.[[18]]
The contract prohibits prosecutions based on evidence generated by the treatment program. But nothing in this language precludes consideration of performance in the program for purposes of ultimate disposition on the original charge. Indeed, the contract contemplates that sentence will be imposed if treatment fails; it would be anomalous to permit information about performance in the program to be considered by the court for purposes of deciding whether J.V. can continue in the program, but prohibit its consideration for purposes of disposition. The fact that extensive efforts have been made to treat a juvenile in the community is certainly relevant to arriving at a disposition that reflects the needs of both the juvenile and the community.[19]
¶ 18 We do agree with J.V. that the contract precludes any use, for purposes of the disposition or otherwise, of statements he made about drug use while participating in the program. The contract provided:
If I quit the Treatment Court program, or am terminated from the Treatment Court Program, anything I have said concerning any drug and alcohol use while participating in the Treatment Court Program cannot be used against me in court.[[20]]
"Cannot be used against me in court" is a broad prohibition, not confined to new prosecutions. The State's references at the disposition hearing to statements made by J.V. during his mental health assessment were improper, because the assessment was undertaken solely for treatment court purposes.
¶ 19 But the record is replete with other evidence supporting the finding that J.V.'s drug use was continuing. The JPC report contains numerous references to J.V.'s admissions of drug use; nothing in the contract precluded the court from considering J.V.'s statements to his JPC. And in any event, J.V.'s ongoing use was obvious, given his failures in treatment. Any error was therefore harmless.
¶ 20 Recent Criminal History. We also agree with J.V that his recent criminal history did not constitute an aggravating factor.[21] A statutory mitigating factor exists if more than one year has passed between the current offense and any prior offense.[22] J.V. assaulted his grandmother 50 weeks before he committed the TMV, and therefore he was two weeks shy of eligibility for that mitigating factor. But the juvenile court concluded that failure to qualify for the mitigating factor constituted the aggravating factor of recent criminal history under RCW *1122 13.40.150(3)(h)(v) (recent criminal history).[23] This was incorrect.
¶ 21 The JJA does not define recent criminal history, but we do not believe the legislature intended failure to meet the requirements for a mitigating factor would, standing alone, constitute an aggravating factor. Decisions treating recent criminal history as an aggravating factor have involved multiple incidents in a far shorter time frame, not a single offense 50 weeks earlier.[24] J.V.'s prior offense did not constitute a statutory aggravating factor.
¶ 22 We decline to address J.V.'s other challenges, because the court clearly found each ground independently sufficient, and the manifest disposition properly rests upon J.V.'s need for treatment.
¶ 23 Length of Sentence. J.V. argues that the 30 to 40 week sentence is clearly excessive. We disagree.
¶ 24 Once the court concludes that a disposition within the standard range would effectuate a manifest injustice, the determinate sentencing scheme of the JJA no longer applies, and the court is vested with broad discretion in determining the disposition.[25]
¶ 25 J.V. argues the record does not indicate what sort of treatment or structure he might need or would receive at JRA. This contention is belied by the record, which includes the JPC's detailed testimony regarding the content and duration of an appropriate treatment program for J.V. The court did not abuse its discretion in setting the length of J.V.'s sentence.
¶ 26 We hold that due process was satisfied, and the manifest injustice disposition was supported by the record.
¶ 27 Affirmed.
WE CONCUR: DWYER, J., and SCHINDLER, A.C.J.
NOTES
[1] RCW 2.28.170.
[2] Clerk's Papers at 24 (emphasis added).
[3] State v. Hunter 102 Wash.App. 630, 639, 9 P.3d 872 (2000); DAVID BOERNER, SENTENCING IN WASHINGTON § 9.19 at 9-58 (1985) ("[A]n exceptional sentence is a possibility in every sentencing under the Sentencing Reform Act. To require that each defendant be given notice of that ever-existent potentiality would be redundant.... The possibility of an exceptional sentence always exists, and notice of that fact is inherent in the statutory provisions which create the possibility.")
[4] "The provisions of chapters 13.04 and 13.40 RCW ... shall be the exclusive authority for the adjudication and disposition of juvenile offenders except where otherwise expressly provided." RCW 13.04.450.
[5] RCW 13.40.160(2). RCW 13.40.160 states in relevant part:

Disposition order  Court's action prescribed  Disposition outside standard range  Right of appeal....
(1) The standard range disposition for a juvenile adjudicated of an offense is determined according to RCW 13.40.0357.
....
(2) If the court concludes, and enters reasons for its conclusion, that disposition within the standard range would effectuate a manifest injustice the court shall impose a disposition outside the standard range, as indicated in option D of RCW 13.40.0357. The court's finding of manifest injustice shall be supported by clear and convincing evidence.
A disposition outside the standard range shall be determinate and shall be comprised of confinement or community supervision, or a combination thereof. When a judge finds a manifest injustice and imposes a sentence of confinement exceeding thirty days, the court shall sentence the juvenile to a maximum term, and the provisions of RCW 13.40.030(2) shall be used to determine the range. A disposition outside the standard range is appealable under RCW 13.40.230 by the state or the respondent. A disposition within the standard range is not appealable under RCW 13.40.230.
[6] RCW 13.40.020(17).
[7] State v. Moro, 117 Wash.App. 913, 923, 73 P.3d 1029 (2003) (RCW 13.40.160(2) "does not require express notice to a defendant that the court is considering imposing a manifest injustice sentence").
[8] "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth." State v. Solomon, 114 Wash. App. 781, 789, 60 P.3d 1215 (2002).
[9] The clear and convincing standard is comparable to the beyond a reasonable doubt standard. State v. Rhodes, 92 Wash.2d 755, 760, 600 P.2d 1264 (1979), overruled on other grounds, (State v. Baldwin, 150 Wash.2d 448, 78 P.3d 1005 (2003)).
[10] RCW 13.40.230(2).
[11] RCW 13.40.150(3) provides the court shall:

(h) Consider whether or not any of the following mitigating factors exist:
(i) The respondent's conduct neither caused nor threatened serious bodily injury or the respondent did not contemplate that his or her conduct would cause or threaten serious bodily injury;
(ii) The respondent acted under strong and immediate provocation;
(iii) The respondent was suffering from a mental or physical condition that significantly reduced his or her culpability for the offense though failing to establish a defense;
(iv) Prior to his or her detection, the respondent compensated or made a good faith attempt to compensate the victim for the injury or loss sustained; and
(v) There has been at least one year between the respondent's current offense and any prior criminal offense;
(i) Consider whether or not any of the following aggravating factors exist:
(i) In the commission of the offense, or in flight therefrom, the respondent inflicted or attempted to inflict serious bodily injury to another;
(ii) The offense was committed in an especially heinous, cruel, or depraved manner;
(iii) The victim or victims were particularly vulnerable;
(iv) The respondent has a recent criminal history or has failed to comply with conditions of a recent dispositional order or diversion agreement;
(v) The current offense included a finding of sexual motivation pursuant to RCW 13.40.135;
(vi) The respondent was the leader of a criminal enterprise involving several persons; and
(vii) There are other complaints which have resulted in diversion or a finding or plea of guilty but which are not included as criminal history.
RCW 13.40.150(3) (emphasis added).
[12] State v. S.H., 75 Wash.App. 1, 11-12, 877 P.2d 205 (1994).
[13] RCW 13.40.150(1).
[14] RCW 13.40.010(2). See also State v. Duncan, 90 Wash.App. 808, 812, 960 P.2d 941 (1998) ("purposes [of JJA] include protection of the citizenry and provision of necessary treatment, supervision and custody for juvenile offenders").
[15] S.H., 75 Wash.App. at 12, 877 P.2d 205 ("Responding to a need for treatment is an appropriate basis for a manifest injustice disposition and is determined by the specific needs of the particular defendant."); State v. Tauala, 54 Wash.App. 81, 87, 771 P.2d 1188 (1989).
[16] State v. T.E.C., 122 Wash.App. 9, 17-18, 92 P.3d 263 (2004) (quoting State v. J.N., 64 Wash. App. 112, 114-15, 823 P.2d 1128 (1992)).
[17] Clerk's Papers at 76. The court went on to note: "While in treatment court, Respondent was provided with the following chemical dependency treatment interventions: (1) he was given an MST therapist and received MST counseling through Central Youth and Family Services; (2) he received intensive outpatient substance abuse counseling through the Center for Human Services; (3) he received inpatient substance abuse counseling at Lakeside Milam. Respondent has escaped while on [electronic home monitoring] and when placed on pass from detention to Lakeside Milam, Respondent left the inpatient program facility three times in three days, and remained on warrant status for a period approximately two months thereafter." Id.
[18] Clerk's Papers at 22.
[19] See State v. Moro, 117 Wash.App. 913, 918, 73 P.3d 1029 (2003) ("the need for treatment or rehabilitation, . . . and the previous failure of noncustodial treatment or supervision are valid reasons that support a sentence outside the standard range").
[20] Clerk's Papers at 24.
[21] RCW 13.40.150(3)(i)(iv) states, "The respondent has a recent criminal history or has failed to comply with conditions of a recent dispositional order or diversion agreement."
[22] RCW 13.40.150(3)(h)(v).
[23] The court found: "Respondent has a recent criminal history because there has not been at least one year between the Respondent's current offense and any prior criminal offense. Respondent committed Assault in the Fourth Degree, Domestic Violence, against his grandmother on or about February 2, 2004. On or about January 18, 2005, Respondent committed the crime of Taking a Motor Vehicle Without Permission of the Owner in the Second Degree." Clerk's Papers at 75.
[24] See, e.g., State v. N.E., 70 Wash.App. 602, 604, 854 P.2d 672 (1993) (recent criminal history where juvenile convicted of three prostitution charges and two escapes in prior 12 months); In re Latson, 45 Wash.App. 716, 719, 726 P.2d 1042 (1986) (one conviction two weeks prior to the relevant offense and four further convictions less than three months after the relevant offense indicated "rapid repetition of illegal behavior . . . certainly relevant to a manifest injustice disposition.").
[25] State v. Tauala, 54 Wash.App. 81, 86, 771 P.2d 1188 (1989).