

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77360-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAKODA T. LOOMER, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 25, 2018 |
| | ) | |

APPELWICK, C.J. — Loomer pleaded guilty to attempted child molestation in the first degree, and received a manifest injustice sentence. He argues that he was denied due process, because he did not receive notice at the time of his plea that the probation department would recommend a manifest injustice sentence. He also argues that the recommendation violated separation of powers, that the evidence was insufficient, that the trial court erred by excluding his guardian from the courtroom, and that the trial court violated the appearance of fairness. We affirm.

## FACTS

Dakoda Loomer, a juvenile, was charged with one count of attempted child molestation in the first degree for acts against his five year old half-brother. On May 24, 2017, Loomer pleaded guilty. As part of the plea agreement, the State agreed to recommend a Special Sex Offender Dispositional Alternative (SSODA) if Loomer was eligible. If not eligible, the State agreed to recommend a standard

range sentence. In his statement of guilty plea, Loomer acknowledged that "[a]lthough the judge will consider recommendations of the prosecuting attorney and the probation officer, the judge may impose any sentence he or she feels is appropriate, up to the maximum allowed by law."

On July 31, 2017, SSODA treatment providers notified the probation office that Loomer was not amenable to treatment and participation in the SSODA program. The SSODA evaluation cited Loomer's denial of responsibility for the actions to which he pleaded guilty, inability to keep appointment commitments, and inability or unwillingness to commit to the program.

Following this evaluation, on August 1, 2017, the juvenile probation officer gave notice to the court and the parties that it would ask the court to impose a manifest injustice sentence. Loomer opposed this.

The trial court held a dispositional hearing on August 30, 2017. It adopted the probation officer's recommendation, and sentenced Loomer to a manifest injustice sentence of 36 to 40 weeks. It based this sentence on two aggravating factors: a serious risk to reoffend and that the five year old victim was particularly vulnerable.

Loomer appeals.

## DISCUSSION

Loomer makes five arguments. First, he argues that he was denied due process, because he did not have notice that the probation officer would seek a manifest injustice sentence prior to entering a guilty plea. Second, he argues that it violates separation of powers for a probation officers to request and prove

2

aggravating factors in a juvenile felony case. Third, he argues that the evidence was insufficient to prove those aggravating factors. Fourth, he argues that the trial court abused its discretion in excluding a family member who interrupted the sentencing proceeding, thereby barring her from speaking on his behalf. Finally, he argues that the trial court violated the appearance of fairness doctrine by sua sponte examining the probation officer regarding the manifest injustice sentence.

## I. Due Process

Loomer first argues that he was denied due process, because, prior to entering his plea, he did not have notice of the probation department's intent to seek a manifest injustice sentence.

Juveniles are entitled to the essentials of due process and fair treatment. In re Winship, 397 U.S. 358, 359, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Due process requires that a defendant must receive notice prior to the proceeding that the State seeks to prove circumstances warranting a manifest injustice sentence.[1] See State v. Siers, 174 Wn.2d 269, 277, 274 P.3d 358 (2012). However, here the

---

[1] Under Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) and Blakely v. Washington, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), a fact that increases the penalty beyond a standard range sentence, such as an aggravating factor, must be proven beyond a reasonable doubt. Apprendi and Blakely go to the proof required for a manifest injustice sentence. They do not relate to the due process requirements for notice of intent to seek a manifest injustice sentence. But, Loomer cites them due to their emphasis on due process protections in the context of exceptional sentences, and urges the court to apply that emphasis to juvenile proceedings.

State did not seek to prove a manifest injustice sentence.[2] Instead, the probation department did.

State v. J.V., 132 Wn. App. 533, 132 P.3d 1116 (2006) is substantially similar to this distinctive scenario. There, J.V. was charged with assault and taking a motor vehicle without permission. Id. at 537. He was permitted to enter a treatment court program, and stipulated that if he was terminated from treatment court, he would be tried on the facts in the police report alone. Id. J.V. was terminated from the program, and the trial court found him guilty on both charges. Id. at 537-38. The probation counselor recommended a standard range sentence for the assault charge, but also recommended a manifest injustice sentence for the taking of a motor vehicle charge. Id. at 538. The trial court accepted the recommendation. Id. On appeal, J.V. argued that his due process rights were violated, because he did not receive notice that the probation officer would recommend a manifest injustice sentence. Id. This court disagreed:

> The contract did not expressly advise J.V. that a manifest injustice disposition was a possibility, but notice of a potential punishment is adequate for due process purposes where the punishment is authorized in a relevant statute. . . . The statutes clearly provide notice that a manifest injustice disposition is a possibility in all juvenile sentences. This notice satisfies due process.

Id. at 539-40.

We acknowledge that J.V. is slightly different, because here the SSODA results partially informed probation's decision. And, Loomer's SSODA failure

---

[2] The trial court agreed with Loomer that the State was not entitled to conduct direct examination of the probation officers, because the State did not seek a manifest injustice sentence.

arose after he had pleaded guilty, whereas J.V.'s treatment court termination occurred before his trial. Id. at 537-38. However, like in J.V., although Loomer did not receive notice that probation would recommend a manifest injustice sentence, the Juvenile Justice Act of 1977 (JJA), chapter 13.40 RCW, specifically RCW 13.40.160 should have alerted him to that possibility. And, the trial court and plea agreement both explicitly informed Loomer prior to his plea that it need not follow the State's recommendation. Because the State's recommendation was the standard range, this necessarily informed Loomer that a sentence outside the standard range was a possibility.

Moreover, a trial court may impose a manifest injustice sentence even when neither the State nor the probation department seeks one. See State v. Moro, 117 Wn. App. 913, 923, 73 P.3d 1029 (2003). In Moro, there was no such notice. The trial court alone was considering and ultimately imposed a manifest injustice sentence sua sponte. Id. Moro did not receive any specific notice of this. Id. On appeal, this court held that the sentence did not violate due process. Id. It reasoned that the court adequately informed the defendant of the possibility by stating, upon his plea, that it " 'doesn't have to follow anybody's recommendations.' "[3] Id.

---

[3] Loomer argues that Moro should not bear on this case, because it was decided prior to Apprendi and Blakely. But, Moro's general holding, that the trial court adequately notified Moro of the potential for a sentence different from any recommendation, does not conflict with the Apprendi and Blakely holdings. Indeed, opinions of this court have observed the challenge in applying those cases to juvenile dispositions: "Without a right of jury trial in juvenile cases, it is conceptually awkward to try to extract the due process component from Apprendi and Blakely and graft it onto nonjury juvenile dispositions." State v. Tai N., 127 Wn. App. 733, 741, 113 P.3d 19 (2005).

In accord with J.V., we find that due process was satisfied here. When Loomer pleaded guilty, the parties believed that he would be participating in the SSODA program. Loomer did not participate in the SSODA evaluation, and thus was deemed ineligible for the program. When Loomer was deemed ineligible for the SSODA program, the matter moved to sentencing. After reviewing Loomer's failure to cooperate in the evaluation for the SSODA program, the probation department decided to recommend a manifest injustice sentence. Loomer was given notice of the recommendation adequate to prepare to respond at sentencing. We hold that Loomer was not denied his due process rights.

However, we are mindful of the strong public concerns about fairness in the juvenile justice system, including the appearance of fairness that underlies Loomer's argument. The juvenile, the rehabilitative process, and the public perception of the justice system would be better served if the juvenile has actual explicit notice prior to any plea agreement that the probation department has independent authority to challenge the sentence recommendation in the plea and to seek a manifest injustice sentence.

II. Separation of Powers

Loomer next argues that it violates separation of powers for a probation officer to allege and seek to prove aggravating factors.[4] Specifically, he argues

---

[4] Loomer did not raise the specific separation of powers argument below. But, Washington courts have previously exercised their discretion to review separation of powers arguments not raised below. See State v. Aguirre, 73 Wn. App. 682, 687-88, 871 P.2d 616 (1994). The Aguirre court reviewed such an argument to satisfy its obligation to correct manifest constitutional error. Id. In accord with Aguirre, we review the argument about separation of powers raised for the first time on appeal.

that this invades the province of the prosecution to criminally charge and prove criminal offenses in juvenile felony cases. This court reviews constitutional challenges de novo. State v. Bradshaw, 152 Wn.2d 530, 531, 98 P.3d 1190 (2004).

Prosecutors are members of the executive branch, and have "fundamental and inherent charging discretion." See State v. Rice, 174 Wn.2d 884, 900, 905-06, 279 P.3d 849 (2012). Here, the manifest injustice sentence was recommended by a juvenile court assistant administrator, who is both part of the juvenile probation department, and a member of the judicial branch.[5] See RCW 13.04.035(1) (the juvenile court assistant administrator also serves in a capacity as a probation counselor). Therefore, Loomer argues that the judicial branch encroached on the prosecuting attorney's executive branch powers.

But, as the State points out, charging a person with an offense is distinct from recommending an exceptional sentence. This court has explicitly stated in a case involving a juvenile defendant that "[c]ounselors may recommend exceptional sentences even when their recommendations conflict with those of those prosecution." State v. Merz, 54 Wn. App. 23, 26-27, 771 P.2d 1178 (1989).

Loomer's reply argues that recommendations based on prepared reports may be acceptable, but recommendations for disposition involve a legal question, which is the sole province of the prosecutor. However, Loomer fails to present any authority suggesting that the juvenile probation department's recommendation on

---

[5] Juvenile courts are administered by the superior court, and thus are part of the judicial branch. RCW 13.04.035.

aggravating factors is the equivalent of a charging decision. And, Merz explicitly allows probation officers to make recommendations that differ from the prosecution. 54 Wn. App. at 26. The probation officer's recommendation did not violate the separation of powers.

III.   Sufficiency of Evidence of Aggravating Factors

Loomer next argues that the evidence was insufficient to prove the aggravating factors: that the victim was particularly vulnerable and that Loomer posed a serious risk to reoffend.

Appellate courts use the same standard of review for the sufficiency of evidence of an aggravating factor as they do for the sufficiency of evidence of the elements of a crime. See State v. Yarbrough, 151 Wn. App. 66, 96, 210 P.3d 1029 (2009). Under this standard, the court views the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the presence of the aggravating circumstances beyond a reasonable doubt. State v. Zigan, 166 Wn. App. 597, 601-02, 270 P.3d 625 (2012).

A. Particular Vulnerability of the Victim

The JJA identifies the particular vulnerability of the victim as an aggravating factor. RCW 13.40.135(3)(i)(iii). When analyzing particular vulnerability, the focus is on the victim. State v. Ogden, 102 Wn. App. 357, 366, 7 P.3d 839 (2000). The court determines if the victim is more vulnerable to the offense than other victims and if the defendant knew of that vulnerability. State v. Bedker, 74 Wn. App. 87, 94, 871 P.2d 673 (1994). The type of vulnerability contemplated by the

aggravating factors listed in the JJAt is extreme youth, advanced age, or physical or mental infirmity. Ogden, 102 Wn. App. at 366.

Here, the manifest injustice report identified the victim as Loomer's five year old half-brother. It also stated that the victim suffered from cognitive delays due to a lack of oxygen at birth. Case law establishes that a five year old is particularly vulnerable due to age. See State v. Fisher, 108 Wn.2d 419, 425, 739 P.2d 683 (1987) (five and one-half-year old victim found to be particularly vulnerable), overruled in part on other grounds by State v. Hughes, 154 Wn.2d 118, 140, 110 P.3d 192 (2005), abrogated on other grounds by Washington v. Recuenco, 548 U.S. 212, 216, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006); State v. J.S., 70 Wn. App. 659, 667, 855 P.2d 280 (1993) (four year old "particularly vulnerable" due to age.); State v. T.E.H., 91 Wn. App. 908, 917, 960 P.2d 441 (1998) (finding that a victim was particularly vulnerable, because "the 5-year-old child was subject to the transgressions of an 11-year-old child, physically bigger and who had little or no supervision.").

Loomer argues that the author of the manifest injustice report, a probation officer, did not have sufficient knowledge of the specific cognitive delays that the victim suffers from. But, case law dictates that a five year old, even without cognitive delays, may be considered particularly vulnerable. See T.E.H., 91 Wn. App. at 917. The evidence was sufficient to support this aggravating factor.

B. Serious Risk to Reoffend

Loomer also argues that the evidence was insufficient to prove that he posed a serious risk to reoffend. He argues that the trial court's decision was

based on nothing more than conclusions of the probation department, and that the probation department had no specific expertise or evidence to rely on in making the recommendation.

Although it is not a statutorily enumerated aggravating factor, "A high risk that a juvenile will reoffend is a valid ground for a manifest injustice disposition." T.E.H., 91 Wn. App. at 917-18; see also RCW 13.40.150(3)(h)(v)(i). Loomer argues that the lack of any expert opinion, or evaluation of Loomer's actual likelihood to reoffend, renders the evidence insufficient to establish this factor.

Case law says otherwise. For example, in State v. Jacobsen, 95 Wn. App. 967, 982, 977 P.2d 1250 (1999), this court reasoned that "[a] juvenile offender's denial of his or her criminal acts is a relevant factor for the court to consider when deciding whether a juvenile poses a high risk to reoffend." Moreover, in T.E.H., the court found a serious risk of reoffending. 91 Wn. App. at 917-18. It relied on "evidence of the prior criminal referrals that demonstrates increasingly aggressive behavior. Further, the probation counselor's report foreshadowed TH's action." Id. at 918.

Here, the evidence tracks the considerations in T.E.H. and Jacobsen. Loomer has no criminal history. But, the manifest injustice report presented to the trial court stated that Loomer had repeatedly violated the court's orders of pretrial supervision. It noted that this behavior became worse as Loomer's case progressed. The manifest injustice report also stated that, although Loomer pleaded guilty, Loomer told a counselor that " 'I admitted to [the crime] just to get out of there and get the stupid court thing done with and get all of this over with.' "

He also answered " 'no' " to polygraph questions concerning the charges. The trial court was presented with sufficient evidence to find that Loomer had a serious likelihood of reoffending.

IV.    Exclusion of Guardian from Courtroom

Loomer argues that the trial court erred in excluding his grandmother from the courtroom, and thereby prevented her from speaking on his behalf prior to sentencing.   He argues that this violated his due process rights, because Washington defendants have a right to allocution if they request it, and that extends to guardians of juveniles.

Loomer's grandmother—who was also his guardian—was present at the dispositional hearing.  While the trial court was examining the probation officer on why she sought the longer sentence, the following exchange occurred:

> THE WITNESS: . . . . So there are many more beds in the community, and all of the group homes that do serve that population have contracts with certified sex offender treatment providers.  And I think a 30 to 40 week sentence would increase the likelihood –
>
> MRS. LOOMER: I knew it.
>
> THE WITNESS: That if Cody behaved himself, and followed treatment, engaged in treatment --
>
> MRS. LOOMER: I knew it.
>
> THE WITNESS: -- did all of those things, that he would be eligible to potentially transfer to a group home and participate in those services.  Versus a standard range he releases at 15 weeks, okay, he's out in 15 weeks with 15 weeks of --
>
> MRS. LOOMER: I knew you bastards would do this.
>
> THE COURT: Hang on a second.

Ma'am, please. I need you to not interject here, or I'm going to have to ask you to leave the room, okay? I've got to have a record here that everybody can follow and understand. And if you're going to keep speaking out like this, I'm going to have to ask you to leave, okay? So you're welcome to stay, but I can't have you interrupting this. So, please, be quiet.

Go ahead.

THE WITNESS: So with that established date between the range, JRA [(Juvnile Rehabilitation Administration)] is clearly able to set that release date anywhere within the range. They do what are called client behavioral assessments; I believe it's about every 90 days. They can bump those up quicker, and the only way that that release date would be set past the minimum --

MRS. LOOMER: (Indecipherable.)

THE WITNESS: -- would be through a client behavioral assessment, and then they'd set a new date further out.

THE COURT: Stop. We're going to take a recess; I need you to leave. When I come back out here, I need you out of this room. If you don't leave, I'll have a deputy remove you because I can't have you interrupting this.

MRS. LOOMER: I won't say another word.

(A break was had off the record.)

THE COURT: Well, I think the record should reflect that the Court felt compelled to ask Dakoda's grandmother to leave the room because she was disrupting the proceedings verbally with outbursts. I asked her to be quiet; I told her if she did -- if she interrupted again I would have to ask her to leave. We resumed testimony, and she immediately interrupted again, so I asked her to leave or if she refused to leave informed her that I would have a deputy remove her. I took a recess.

I see that she's gone, I see the deputy's here, I don't know if she actually had to be removed. I hope that's not the case, but at any rate that's where we're at now and I thought it was important to make a record of that. It's regrettable. I rarely kick someone out of a courtroom, but I felt I had to do it today and I'm sorry it came to that.

Anyway, please, continue.

When it came time for Loomer's guardians to speak, Loomer's grandfather spoke. Loomer then requested that Loomer's grandmother be allowed to return so that she could also give a statement. The trial court did not allow it.

A trial court has broad discretion in decisions over management and security of the courtroom. State v. Dye, 178 Wn.2d 541, 547-48, 309 P.3d 1192 (2013). An appellate court will only overturn such a decision if it is manifestly unreasonable or based on untenable grounds or untenable reasons. Id. at 548. Our Supreme Court has described the trial court's power in excluding spectators as follows:

> In addition to its inherent authority, the trial court, under RCW 2.28.010, has the power to preserve and enforce order in the courtroom and to provide for the orderly conduct of its proceedings. The power to control the proceedings must include the power to remove distracting spectators, or else it would be meaningless. Any other rule would leave a trial court judge unable to keep the order necessary for a fair proceeding.

State v. Lormor, 172 Wn.2d 85, 93-94, 257 P.3d 624 (2011) (footnote omitted).

But, RCW 13.40.150(3)(d) instructs that, before entering a dispositional order, the court shall "afford the respondent and the respondent's parent, guardian, or custodian an opportunity to speak in the respondent's behalf." Loomer stresses that the term "shall" in this statute indicates that it is mandatory.

It appears that no published Washington case has addressed a similar scenario where a family member of a juvenile was prevented from speaking on the juveniles behalf due to disruptive behavior. But, while RCW 13.40.150(3)(d) speaks in mandatory terms, nothing suggests that this is an absolute that can

13

never cede to other interests. Other courtroom rights cede to interests in courtroom decorum. For example, a criminal defendant may forfeit his right to be present at a criminal trial upon disruptive behavior. See, e.g., State v. DeWeese, 117 Wn.2d 369, 381, 816 P.2d 1 (1991). The same should hold true for the right to have a guardian speak on a defendant's behalf.

And, on these facts, the trial court acted within its discretion. The grandmother spoke out of turn. She insulted the witness during the witness's testimony. The trial court warned her. She again spoke out of turn and disrupted the same witness's testimony. And, although the grandmother did not speak, the grandfather did. The trial court did not abuse its discretion.

V. Appearance of Fairness

Finally, Loomer argues that the trial court violated the appearance of fairness by asking the probation counselors questions sua sponte. The court asked its own questions of two probation officers. Loomer does not take issue with the specifics of the questioning. Rather, he contends that the mere fact that the court pursued the questioning on its own violated the appearance of fairness, because doing so fulfilled the role of prosecutor.

Under the appearance of fairness doctrine, a judicial proceeding is valid only if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing. State v. Gamble, 168 Wn.2d 161, 187, 225 P.3d 973 (2010). The law goes farther than requiring an impartial judge; it also requires that the judge appear to be impartial. Id. Evidence of a judge's actual or potential bias must be shown before an appearance of fairness claim will

14

succeed. Id. at 187-88. This court presumes that a trial court performed its functions regularly and properly without bias or prejudice. Hickok-Knight v. Wal-Mart Stores, Inc., 170 Wn. App. 279, 318, 284 P.3d 749 (2012).

Here, the trial court did not advocate for a party. The line of questioning reflects an effort to determine why the probation officers were seeking a sentence longer than that recommended by the prosecutor. For example, one of the court's questions to the probation officer was, "So tell me if you can, please, what are the pros and cons here for Dakoda as you see it on the 15 to 36 weeks on the one hand, and the 36 to 40 weeks on the other? What are the benefits, if any, to either of these, please?" The court also asked, "So the general idea is the more time imposed the, perhaps, greater opportunity to go to a group home and then get to engage in more offense specific sexual deviancy type of treatment?" The remainder of the questioning tracked this theme. The questions reflect an impartial effort by the trial court to apprise itself of as much information as it could to make a sound and informed decision. The trial court did not violate the appearance of fairness.

We affirm.

_____, C.J.

WE CONCUR:

_____       _____

15